UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARENZ MCINNIS,

          Plaintiff,                   Case No. 2:16-cv-13525
                                           District Judge Robert H. Cleland
v.                                  Magistrate Judge Anthony P. Patti

TOWNSHIP OF WEST
BLOOMFIELD, *et al.*,

          Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS MENDHAM AND FREDERICK'S MOTION FOR SUMMARY JUDGMENT (DE 21)

**I.**    **RECOMMENDATION**:  The Court should **GRANT** Defendants

Mendham and Frederick's motion for summary judgment.  (DE 21.)  If the Court

grants Defendants Mendham and Frederick's motion for summary judgment, then

there will be no remaining, named Defendants in this matter.

**II.**    **REPORT**

    **A.**    **Background**

       On June 4, 2014, at the age of 16, Larenz McInnis was taken into custody by

Officer Christopher Frederick of the West Bloomfield Township Police

Department on suspicion of one or more misdemeanor drug-related offenses.  (DE

21-1 at 2-3, 11-12.)  Detective Charles Mendham took possession of Larenz's

iPhone and, on June 5, 2014, "swore to a search warrant for the physical evidence . . . ." (DE 21-1 at 13, 15.)  Plaintiff claims that, on October 1, 2015, Judge Joan E. Young dismissed the charges against him, presumably in Case No. 14-825109-DL (Oakland County Circuit Court Family Division).  (*See* DE 1 ¶¶ 4, 21-22, 33, 55-56.)

### B.    Plaintiff's Complaint

McInnis filed the instant, eight-count lawsuit on September 30, 2016, against named Defendants Township of West Bloomfield, West Bloomfield Police Department (WBPD), Oakland County Prosecutor's Office, Officer Frederick, Detective Mendham, and Assistant Oakland County Prosecutor Soma, as well as attorneys Cook and Haith.  (*Id*. at 1-6.)  He also lists "[d]efendant John Does and others not presently known to the plaintiff [who] were . . . duly appointed West Bloomfield police officers of unknown rank and supervisors of Frederic[k] and Me[n]dham."  (*Id*. at 4-5 ¶ 7.)  He is proceeding *in pro per*.[1]

### C.    The Partial Dismissal

On December 8, 2016, Judge Cleland entered an opinion and order granting Plaintiff's application to proceed *in forma pauperis* and dismissing the action in part.  (DEs 2, 4.)  While the Court declined to dismiss Plaintiff's claims against

---

[1] Although Plaintiff purports to have verified his complaint, it is not "subscribed by him, as true *under penalty of perjury*[.]"  28 U.S.C.A. § 1746 (emphasis added). (*See* DE 1 at 23.)

Officer Frederick, Detective Mendham and the John Doe officer(s), it dismissed the claims against Soma on the basis of absolute immunity.  (DE 4 at 3-4.) Plaintiff's claims against the Oakland County Prosecutor's Office, the Township of West Bloomfield, and the WBPD were also dismissed.  (DE 4 at 4-6.)  Finally, the Court declined to exercise supplemental jurisdiction over Plaintiff's state-law attorney malpractice claims against Defendants Cook and Haith, "two defense attorneys tasked with representing [Plaintiff] during his criminal case[.]"  (DE 4 at 6; *see also* DE 1 ¶¶ 33-44 (Count III).)  *See also McInnis v. Township of West Bloomfield*, No. 16-13525, 2016 WL 10590154 (E.D. Mich. Dec. 8, 2016.)[2]

### D.    The Scheduling Conference

Meanwhile, Judge Cleland referred this case to me for pretrial matters. After Defendants filed their answer, I noticed and conducted a scheduling conference.  (DEs 15, 16.)  The resulting initial scheduling order, *inter alia*, provided a deadline of February 8, 2017 by which to "amend his complaint, without leave, solely for the purpose of substituting in named parties for the John Doe Defendants(s)."  It also set the discovery cut-off for May 8, 2018 and the dispositive motion deadline for June 8, 2018.  (DE 18.)

---

[2] Plaintiff appealed this decision.  (DEs 8-11.)  However, on February 28, 2017, the Sixth Circuit dismissed Plaintiff's appeal.  (DE 12.)  In addition, this Court has since denied what it construed as Plaintiff's motion to vacate.  (DEs 19, 25.)  *See also McInnis v. Township of West Bloomfield, et al.*, No. 16-13525, 2018 WL 4600051 (E.D. Mich.).

### E.     Instant Motion

Following the Court's order of partial dismissal, the only remaining, named

Defendants are Officer Frederick and Detective Mendham.  Currently before the

Court is Defendants Mendham and Frederick's June 5, 2018 motion for summary

judgment.  (DE 21.)  Defendants argue that they are entitled to summary judgment,

because:

   (1)    They have qualified immunity against McInnis' federal
          constitutional claims.

   (2)    There is no liability under 42 U.S.C. § 1986.

   (3)    They have governmental immunity against Plaintiff's state law
          claims.

   (4)    Plaintiff cannot establish his state law claims.

(DE 21 at 6, 12-13.)

### F.     Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

6

grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### G.    Discussion

#### 1.    Defendants Mendham and Frederick's motion for summary judgment is unopposed.

Defendants filed their motion for summary judgment on June 5, 2018.  "A respondent opposing a motion must file a response, including a brief and supporting documents then available."  E.D. Mich. LR 7.1(c)(1).  "A response to a dispositive motion must be filed within 21 days after service of the motion."  E.D. Mich. LR 7.1(e)(1)(B).  Therefore, Plaintiff's response would ordinarily have been due on or about June 29, 2018.  Fed. R. Civ. P. 6(a),(d).

On June 29, 2018, I entered an order, which required Plaintiff to file a response on or before July 30, 2018.  (DE 22.)  Plaintiff sought an extension of time, which the Court granted and extended the deadline up to and including August 7, 2018.  (DEs 23, 24.)  To date, no response has been filed.  Thus, the motion is unopposed.

Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded."  *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden."  *Carver*, 946 F.2d at 455.

7

**2.**    **Plaintiff's federal constitutional claims against Defendants Frederick and Mendham**

**a.**    **42 U.S.C. § 1983**

Plaintiff's complaint is based, in part, upon 42 U.S.C. § 1983.  (DE 1 ¶¶ 1, 25, 31, 50.)  "Section 1983 does not permit individuals to sue state actors in the abstract; it requires them to connect alleged constitutional violations of the individuals' rights to state conduct."  *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 614 (6th Cir. 2018) (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).  Although Plaintiff's causes of action specifically mention several federal constitutional amendments – *e.g.*, the First, Fourth, Fifth, Sixth, and Fourteenth (*see* DE 1 ¶¶ 12-26) – I have interpreted Plaintiff's claims against Frederick and Mendham through the lens of *Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]").  I have also kept in mind the Supreme Court's clarification that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 393 (1989)).

**i.**    **Fourth Amendment search and seizure of person and backpack**

8

To the extent Count I is based upon Defendant Frederick's June 4, 2014 search of Plaintiff and his personal property without probable cause and without a warrant (DE 1 ¶¶ 13, 16, 17), Defendant Frederick is entitled to summary judgment. "[E]xceptions to the general requirement of a search warrant include" searches: (a) of an automobile, (b) incident to a lawful arrest, (c) based on the plain view doctrine, (d) based on consent, (e) based upon an immediate threat to life, and (f) occurring in hot pursuit of a fleeing felon. *United States v. Nelson*, 459 F.2d 884, 888 (6th Cir. 1972).

Defendants argue that Frederick's "search of McInnis and his backpack are justified by" two exceptions to the search warrant requirement. (DE 21 at 30.) The Court should agree. First, "[a]mong the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Such a search may be made of "the person of the arrestee by virtue of the lawful arrest[,]" and "the area within the control of the arrestee." *United States v. Robinson*, 414 U.S. 218, 224 (1973). Defendant Frederick's narrative of the events of June 4, 2014 include that he detected "an odor of marijuana emanating from the Toyota . . .[,]" the vehicle in which Plaintiff was a passenger. (DE 21-1 at 11.) Thereafter, Defendant Frederick "ordered Larenz to exit the vehicle, . . . searched him[,] and placed him in the rear of [the] patrol vehicle un-cuffed." (*Id.*)  Thus, as Defendants argue, Defendant Frederick "had probable cause to arrest McInnis . . .

9

[,]" and "a search of McInnis' person was justified incident to his arrest." (DE 21 at 30.)

Second, as the Sixth Circuit has instructed: "Reasonable suspicion supporting a traffic stop may ripen into probable cause to search a vehicle based on the officer's interactions with the car's occupants." *United States v. Lyons*, 687 F.3d 754, 764 (6th Cir. 2012). "Probable cause to search a vehicle is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion. Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Lyons*, 687 F.3d at 764 (internal quotations and citations omitted). Moreover, "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). As Defendant Frederick set forth in his police report narrative, he detected the odor of marijuana emanating from the Toyota, the driver admitted that he "had a small bag of marijuana located in the driver's side door compartment[,]" and the K9 alerted to "several parts of the exterior of the vehicle[,]" and "to a black back pack located on the passenger side floor board." (DE 21-1 at 11; *see also* DE 21 at 31-32.) Under these circumstances, there was probable cause to search the back pack.

ii.  **Fourth Amendment seizure of cell phone and search by warrant**

10

According to Defendant Mendham's narrative of the events of June 5, 2014, he "swore to a search warrant for the physical evidence of McInnis' cell phone before Magistrate Peter Mansour."  (DE 21-1 at 15.)  In Count I, Plaintiff alleges that Defendant Mendham "knowingly made perjurious or recklessly false statements . . . to support issuance of a warrant to search plaintiff['s] property, in violation of the Plaintiff's Fourth Amendment rights."  (DE 1 ¶ 20; *see also* DE 1 ¶¶ 13, 25.)  Plaintiff also seems to allege that the events of June 5, 2014 evidence that Frederick and Mendham had "an ulterior motive for arresting [him] and charging him with crimes he did not commi[t][.]"  (DE 1 ¶ 22.)  Defendants defend the cell phone search.  (*See* DE 21 at 32-33.)

At the outset, Plaintiff does not seem to challenge the seizure of the cell phone.  *See*, *e.g.*, *Riley v. California*, 134 S. Ct. 2473, 2486 (2014) ("Both Riley and Wurie concede that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant.").  Instead, Plaintiff's claim seems limited to statements Defendant Mendham made in support of the search warrant application.  "In § 1983 actions, an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant."  *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) (citing *Malley v. Briggs,* 475 U.S. 335, 343–345 (1986)).  True, "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to

11

the judge such that but for these falsities the judge would not have issued the

warrant." *Yancey v. Carroll Cty., Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989).

Nonetheless, Plaintiff has "failed to identify any statements in the affidavit they

believed were false[,]" and "failed to show how any allegedly false statements

were material to a finding of probable cause." *BPNC, Inc. v. Taft*, 147 F. App'x

525, 530 (6th Cir. 2005).[3]  Therefore, to the extent this claim is based upon

Defendant Mendham's statements in support of the search warrant application,

Defendant Mendham is entitled to summary judgment.

### iii.        False or warrantless arrest

Count I also seems intended to allege a cause of action for false arrest.  (*See*

DE 1 ¶ 26.)  In particular, Plaintiff contends that there was no warrant for

Plaintiff's June 4, 2014 arrest by Defendant Frederick.  (*Id*. ¶ 23.)  As Plaintiff puts

it, "[n]o complaint, information, or indictment was ever sworn against Plaintiff

alleging offenses occurring prior to the moment Defendant Frederick handcuffed

McInnis and told him he was under arrest."  (*Id*. ¶ 24.)  In addition, claiming that

Defendants Frederick and Mendham had "an ulterior motive," Plaintiff seems to

take issue with statements made "on record at the [p]robable cause hearing . . . ."

---

[3] Although Plaintiff's complaint refers to Exhibit A (the police report) and Exhibit
B (the summons to come to court), neither is attached to his complaint.  (DE 1.)
The police report is attached to the instant motion, but the references to the cell
phone do not illuminate the search warrant application.  (DE 21-1 at 13, 15.)  The
summons does not seem to be a part of the record in this case.

(DE 1 ¶ 22.)  Plaintiff purports that his allegation of "unlawful and malicious arrest and acts of perjury made on the record," should be analyzed under the due process and equal protection clauses of the Fifth and/or Fourteenth Amendments.  (*Id*. ¶ 25.)  "To prevail on a false arrest claim, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff; put differently, probable cause provides a complete defense to a claim of false arrest."  *Halasah v. City of Kirtland, Ohio*, 574 F. App'x 624, 629 (6th Cir. 2014) (citing *Voyticky v. Vill. of Timberlake,* 412 F.3d 669, 677 (6th Cir.2005)).  Defendant Frederick had probable cause to arrest Plaintiff.

Additionally, Plaintiff's assertion that he was arrested without a warrant seems related to his contention that he had *not* "committed a felony or misdemeanor in the presence of either officer."  (DE 1 ¶¶ 23, 54.)  Perhaps Plaintiff basis these statements on the guidance that "[a] warrantless arrest of an individual in a public place for a felony, or a misdemeanor *committed in the officer's presence*, is consistent with the Fourth Amendment if the arrest is supported by probable cause."  *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (emphasis added) (citing *United States v. Watson,* 423 U.S. 411, 424 (1976).  Yet, Defendant Frederick's June 4, 2014 narrative describes the contents of the back pack, which included, *inter alia*, "red grinder containing 4 grams of marijuana[,]" and also notes that the back pack "was located between Larenz's legs at the time of

13

the stop." (DE 21-1 at 11.)  In addition, Defendant Frederick documents that

Larenz admitted to him that "the back pack and the drugs inside of it were in fact

his." (DE 21-1 at 12.)  At least as to the possession of marijuana offense, Officer

Frederick's narrative calls into doubt Plaintiff's claim that he did not commit a

crime in the presence of either officer.

### iv.      Speedy Trial

Plaintiff also complains that since-dismissed Defendant Soma's January 17,

2015 actions violated the 180-day period set forth in M.C.R. 6.004 ("Speedy

Trial").  (DE 1 ¶ 18, 52(d).)  Not only is this a state law claim over which the Court

should decline to exercise supplemental jurisdiction, but the statute also provides:

> <u>In a felony case</u> *in which the defendant has been incarcerated* for a
> period of 180 days or more to answer for the same crime or a crime
> based on the same conduct or arising from the same criminal episode,
> . . . *the defendant must be released on personal recognizance*, unless
> the court finds by clear and convincing evidence that the defendant is
> likely either to fail to appear for future proceedings or to present a
> danger to any other person or the community.

MCR 6.004(C) (emphases added).  Thus, it does not appear to apply to Plaintiff's

case, as the June 4, 2014 case report notes indicate that Plaintiff "was released to

the custody of his parents pending charges[,]" and Plaintiff appears to have been

charged with only misdemeanor offenses.  (DE 21-1 at 2-3, 12-13.)  Nor does

Plaintiff appear to be relying upon the federal law counterpart, 18 U.S.C. §

3161("Time limits and exclusions").

### v.       Fifth Amendment *Miranda* warnings

Within Count I, Plaintiff alleges that Defendant Frederick questioned

Plaintiff on June 4, 2014 "on the scene of an alleged traffic stop (in which Plaintiff

was the passenger of a parked vehicle), without reading Plaintiff[']s *Miranda*

rights to him prior to questioning, and without consent from his parents, as a result

of his status as a minor . . . ."  (DE 1 ¶ 14.)  Defendants contend that "neither

assertion establishes a § 1983 claim."  (DE 21 at 23.)  The Court should agree.

First, "a § 1983 action" for failure to read the *Miranda* warnings "is squarely

foreclosed by the Supreme Court's decision . . . in *Chavez*."  *McKinley v. City of*

*Mansfield*, 404 F.3d 418, 432 n.13 (6th Cir. 2005) (citing *Chavez v. Martinez,* 538

U.S. 760, 772 (2003) ("Chavez's failure to read Miranda warnings to Martinez did

not violate Martinez's constitutional rights and cannot be grounds for a § 1983

action.")).  *See also Meyers v. City of Chardon*, No. 1:14 CV 2340, 2015 WL

1648992, at *11 (N.D. Ohio Apr. 13, 2015) ("The remedy for a *Miranda* violation

is the exclusion from evidence of any ensuing self-incriminating statements.").[4]

---

[4] In addition, "[s]tatements compelled by police interrogations of course may not
be used against a defendant at trial, . . . but it is not until their use in a criminal case
that a violation of the Self–Incrimination Clause occurs[.]"  *Chavez*, 538 U.S. at
767 (citations omitted).  Although Plaintiff complains that his speedy trial rights
were violated, Plaintiff admits that all charges were dismissed on October 1, 2015.
(DE 1 ¶¶ 18, 21; *see also* DE 1 ¶ 56.)  The Court presumes this dismissal took
place before the beginning of any trial.

Second, Plaintiff seems to rely on cases setting forth "[t]he factors that must be considered in applying the totality of the circumstances test to determine the *admissibility* of a juvenile's confession . . .[,]" which include "the presence of an adult parent, custodian, or guardian[.]"  *People v. Givans*, 227 Mich. App. 113, 121, 575 N.W.2d 84, 88 (1997) (emphasis added); *People v. Good*, 186 Mich. App. 180, 189, 463 N.W.2d 213, 218 (1990).  (DE 1 ¶ 14.)  *See also Friday v. Pitcher*, 200 F. Supp. 2d 725, 735-736 (E.D. Mich. 2002), *aff'd*, 99 F. App'x 568 (6th Cir. 2004) ("petitioner was at least fifteen years of age or older at the time of the shooting and his arrest.").  True, "a child's age properly informs the *Miranda* custody analysis."  *J.D.B. v. North Carolina*, 564 U.S. 261, 265 (2011).  However, Plaintiff admits that the charges against him were dismissed.  Therefore, there are no statements or confession *to admit*.

For these reasons, Defendants are entitled to summary judgment as to Plaintiff's claims that he was questioned without being Mirandized and without his parents' consent.

### vi.   Fourteenth Amendment Due Process in questioning

Plaintiff alleges that, "[o]n June 4, 2014, Officer Frederick failed to comply with Plaintiff['s] procedural due process rights under MCL 764.27," which concerns the arrest procedure in the case of a child less than 17 years of age, "and the juvenile court rules when questioning Plaintiff, who was a minor at the time."

16

(DE 1 ¶ 15.)  Defendants Frederick and Mendham argue that Plaintiff has not

shown a related constitutional violation.  (*See* DE 21 at 25.)  The Court should

agree.

First, to the extent Plaintiff alleges that Defendant Frederick did not comply

with Mich. Comp. Laws § 764.27, the alleged violation of Michigan law "is not

actionable under § 1983."  *Pyles v. Raisor*, 60 F.3d 1211, 1216 (6th Cir. 1995).

Second, as Defendants Frederick and Mendham argue, "Officer Frederick's

questioning itself is not a due process violation."  (DE 21 at 25.)  In *County of*

*Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court "left open the

possibility that unauthorized police behavior in other contexts might 'shock the

conscience' and give rise to § 1983 liability."  *Chavez*, 538 U.S. at 774 (citing

*Lewis*, 523 U.S. at 850).  Plaintiff's allegation that Defendant Frederick questioned

him – a 16-year old passenger of a parked vehicle – without Mirandizing him

and/or without his parents' consent (*see* DE 1 ¶ 14), does not explain how the

questioning "shocked the conscience."  Helpfully, Defendant Frederick's narrative

of the events of June 4, 2014, taken from the same police report to which Plaintiff

draws the Court's attention, provides context:

> I questioned the passenger, Larenz Mc[I]nnis . . . who informed me
> that he had no knowledge of the marijuana in his friend's vehicle.  I
> could detect an odor of marijuana emanating from the Toyota as well.
> I asked Larenz if he had any drugs on his person, Larenz stated he did
> not.

17

(DE 21-1 at 11.)  Eventually, Defendant Frederick "ordered Larenz to exit the vehicle, . . .searched him and placed him in the rear of [the] patrol vehicle un-cuffed."  (*Id*.)  In addition, during a search of the Toyota, the K9 alerted "to a black back pack located on the passenger side floor board."  (*Id*.)  The back pack had been "located between Larenz's legs at the time of the stop."  (*Id*.)  Defendant Frederick "spoke with Larenz who admitted . . . that the back pack and the drugs inside of it were in fact his[,]" and that "he and Jacob had been smoking marijuana earlier today at his residence."  (*Id*. at 12.)  Thereafter, Plaintiff was transported to WBPD, where he was booked, fingerprinted, photographed, placed in an interview room, and "supervised at all times."  (*Id*.)  Plaintiff's parents "denied any request to question Larenz . . . ."  (*Id*.)  According to Defendant Frederick, Defendant Mendham read Larenz his rights, and Plaintiff "signed [the acknowledgment] in the presence of his parents."  (*Id*.)  (*See also* DE 21 at 26-27.)  Neither these events, nor Defendant Mendham's description of his questions of Plaintiff regarding Plaintiff's step father (*see* DE 21-1 at 14), "shock the conscience."

### vii.    False imprisonment

In Count II (detention and confinement in violation of 42 U.S.C. § 1983), Plaintiff takes issue with Defendants Frederick and Mendham's restraint and imprisonment, presumably on June 4, 2014.  (DE 1 ¶¶ 27-32.)  Among other things, Plaintiff claims his false imprisonment arose from "illegitimate motives[.]"

18

(DE 1 ¶ 30; *see also* ¶ 22.)  Plaintiff purports that his allegation of "concerted

unlawful and malicious detention and confinement . . ." should be analyzed under

the due process and equal protection clauses of the Fifth and/or Fourteenth

Amendments.  (DE 1 ¶ 31.)

  "To prevail on a false arrest or imprisonment claim under § 1983 and

Michigan law, a plaintiff must prove that his arrest was not supported by probable

cause."  *Horacek v. Neph*, 466 F. App'x 508, 510 (6th Cir. 2012).  Plaintiff has not

shown that his arrest was without probable cause.  Indeed, the undisputed narrative

contained in Defendant Frederick's police report evidences that:  **(a)** Plaintiff was a

passenger in the Toyota; **(b)** Frederick detected an order of marijuana coming from

the Toyota; **(c)** the backpack, which had been "located between Larenz's legs at

the time of the stop[,]" contained suspected marijuana, among other things; and,

**(d)** Larenz "admitted . . . that the back pack and the drugs inside of it were in fact

his."  (DE 21-1 at 11-12; *see also* DE 21 at 29.)  As such, Defendants Frederick

and Mendham are entitled to summary judgment on this claim.

### viii. Fourth Amendment malicious prosecution

  In Count V is labeled "malicious prosecution."  (DE 1 ¶¶ 52-57; *see also* DE

1 ¶ 58.)  The Sixth Circuit recognizes "a federal claim of malicious prosecution

under the Fourth Amendment where plaintiffs alleged that defendants wrongfully

investigated, prosecuted, convicted, and incarcerated them."  *Thacker v. City of*

*Columbus*, 328 F.3d 244, 258 (6th Cir. 2003) (citing *Spurlock v. Satterfield,* 167

F.3d 995, 1005–1007 (6th Cir.1999)).  Stated otherwise, the Sixth Circuit

recognizes "a separate constitutionally cognizable claim of malicious prosecution

under the Fourth Amendment*."  Thacker,* 328 F.3d at 259.  "To succeed on a

malicious-prosecution claim under § 1983 when the claim is premised on a

violation of the Fourth Amendment, a plaintiff must prove the following:

> First, the plaintiff must show that a criminal prosecution was initiated
> against the plaintiff and that the defendant "ma[d]e, influence[d], or
> participate[d] in the decision to prosecute."  Second, because a § 1983
> claim is premised on the violation of a constitutional right, the
> plaintiff must show that there was a lack of probable cause for the
> criminal prosecution.  Third, the plaintiff must show that, "as a
> consequence of a legal proceeding," the plaintiff suffered a
> "deprivation of liberty," as understood in our Fourth Amendment
> jurisprudence, apart from the initial seizure.  Fourth, the criminal
> proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (internal footnote

and citations omitted).

For purposes of this motion, the first and fourth elements are

undisputed.  (*See* DE 1 ¶¶ 52, 55-56.)  However, it does not appear, as

Defendants Frederick and Mendham argue, that Plaintiff can establish the

second or third elements.  (DE 21 at 34.)  For one thing, as noted above,

there was probable cause for Plaintiff's arrest.  In addition, although the lack

of a docket for the juvenile court case leaves the Court guessing as to the

exact violations with which Plaintiff was charged, the police report lists

several items of suspected or potentially drug-related property attributed to

Plaintiff.  (DE 21-1 at 6-10.)  Thus, even though Plaintiff claims that "[t]he

charges brought against [him] were not based upon probable cause[,]" (DE 1

¶ 53) – a determination which the Court cannot make here on this record (as

the specifics of Oakland County Case No. 14-825109-DL are not apparent) –

there would appear to have been probable cause for the prosecution of drug-

related offenses.  This is so, even if "McInnis hadn't committed a felony or

misdemeanor in the presence of either officer."  (DE 1 ¶ 54.)[5]  Moreover,

Plaintiff has not produced anything to support his claim that Judge Young

took issue with Frederick for violating Plaintiff's constitutional rights or

acknowledged that Frederick, Mendham and Soma "had information their

case was very weak and lacked probable [cause]."  (DE 1 ¶ 56.)

       And, even if there was not, there does not appear to have been a

"deprivation of liberty apart from the initial seizure."  (DE 21 at 34.)  True,

Plaintiff contends that "Defendant Frederick, Defendant Me[n]dham, the

City of West Bloomfield, and Oakland County Prosecutor Nicole Soma

unlawfully restrained Plaintiff of his physical liberty."  (DE 1 ¶ 27.)

However, it appears that Plaintiff was released into his parents' custody that

_____

[5] "Probable cause to make an arrest exists if the facts and circumstances within the
arresting officer's knowledge 'were sufficient to warrant a prudent man in
believing that the [arrestee] had committed or was committing an offense.'"  *Pyles*,
60 F.3d at 1215 (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).

same day, "pending charges[,]" or "pending notification from the Oakland

County Juvenile Court."  (DE 21-1 at 12-13, 15.)  "[T]he initial arrest alone

is an insufficient deprivation of liberty."  *Noonan v. Cty. of Oakland*, 683 F.

App'x 455, 463 (6th Cir. 2017), *cert. denied sub nom. Noonan v. Cty. of*

*Oakland, Mich.*, 138 S. Ct. 1279 (2018).  Therefore, to the extent Count V

attempts to allege malicious prosecution in violation of the Fourth

Amendment, Defendants Frederick and Mendham are entitled to summary

judgment.

### ix.    Abuse of process

Plaintiff titles Count VI "malicious abuse of process."  (DE 1 ¶¶ 58-66.)  For

whatever reason, Plaintiff begins with a citation "to establish the essential elements

of an action for *malicious prosecution*[.]"  *Christian v. Lapidus*, 833 S.W.2d 71, 73

(Tenn. 1992) (emphasis added).  (DE 1 ¶ 58.)  Preliminarily, in Plaintiff's case, any

such state-law claim for malicious prosecution should be analyzed under Michigan

law.  (*See*, *e.g.*, *Payton v. City of Detroit*, 211 Mich. App. 375, 394-395, 536

N.W.2d 233, 242 (1995).)  More to the point, to the extent Count VI attempts to

allege a federal claim for abuse of process under 42 U.S.C. § 1983, "a federal

abuse of process claim does not exist in the law of this circuit."  *Rapp v. Dutcher*,

557 F. App'x 444, 448 (6th Cir. 2014).  (DE 21 at 34.)  If, alternatively, he means

to pursue a state law claim for either malicious prosecution or abuse of process, the Court should decline to exercise supplemental jurisdiction, as discussed *infra*.

### x. Fourth Amendment excessive force

Plaintiff titles Count VII "42 USC 1983 / Battery." (DE 1 ¶¶ 67-70.) Plaintiff contends that Defendant Frederick "intentionally, harmfully, and offensively touched McInnis by handcuffing him[,]" and "indirectly caused Officers of the [WBPD] to intentionally, harmfully, and offensively touch Plaintiff when arresting and processing Plaintiff in the police station." (DE 1 ¶¶ 67-68.) "The Fourth Amendment's prohibition against unreasonable seizures protects citizens from excessive use of force by law enforcement officers." *Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015) (citing *Cass v. City of Dayton*, 770 F.3d 368, 374 (6th Cir. 2014)). "[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham*, 490 U.S. at 388. Plaintiff has not shown how Defendant Frederick and/or Defendant Mendham's handcuffing, arrest and/or processing was intentional, harmful, excessive and/or offensive, nor has he shown how the touching was objectively unreasonable. Nor has he shown any appreciable injury. Therefore, Defendants Frederick and/or Mendham are entitled to summary

judgment to the extent Count VII was intended to allege a claim of excessive force in violation of the Fourth Amendment.

### b.    42 U.S.C. § 1985

The jurisdictional paragraphs of Plaintiff's complaint cite, *inter alia*, 42 U.S.C. § 1985, the title for which is "Conspiracy to interfere with civil rights." However, Count VIII does not allege a clear cause of action under this statute against Defendants Frederick and Mendham.  (DE 1 ¶¶ 71-75.)  Preliminarily, Plaintiff describes *since-dismissed* Defendants Cook and Haith as "co-conspirators[,]" and the allegations of conspiracy within Count IV read like a claim of failure to train by Defendants Soma, West Bloomfield Township, and/or WBPD, *each of whom has been dismissed from this action*.  (*See* DE 1 ¶¶ 8-9, 46(c), 47.)  Perhaps most importantly, it is not clear whether Count VIII, which is titled "Conspiracy," is based upon 42 U.S.C. § 1985(3) ("Depriving persons of rights or privileges"), RICO, or some common law theory.  And, even if Plaintiff intended to bring this claim pursuant to Section 1985(3), "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.") (footnotes

omitted).  Although Plaintiff's complaint vaguely mentions equal protection or equal opportunity (*see* DE 1 ¶¶ 25, 31, 34), Plaintiff's claims that Defendant Frederick "lied in several instances in the police report[,]" or that Defendant Mendham "testified to probable cause for the search of the electronic data on Plaintiff['s] cell phone, [for] which he knew or should have known he lacked probable cause[,]" (DE 1 ¶¶ 72(a),(b)), do not evidence "invidiously discriminatory animus."  Therefore, to the extent Plaintiff intended Count VIII to be based upon Section 1985(3), and alleged against Defendants Frederick and Mendham, if at all, they are entitled to summary judgment.

### c.    42 U.S.C. § 1986

Plaintiff cites 42 U.S.C. § 1986, the title for which is "Action for neglect to prevent," within the jurisdictional paragraphs of his complaint and as the title of Count IV.  (DE 1 at 3, 13.)  Specifically, Plaintiff claims that Defendants Frederick and Mendham, as Officers of the WBPD, "were acting under the direction and control of Defendant Nicole Soma, John Does, and Defendant West Bloomfield." (*Id*. ¶ 45.)  To a certain extent, Count IV reads like a claim of failure to train by Defendants Soma, West Bloomfield Township, and/or WBPD.  (*Id*. ¶ 46.)  Plaintiff also contends that the WBPD "directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant police officers . . . ."  (*Id*. ¶ 49).  In Plaintiff's words, "Defendants

25

Frederick[,] Me[n]dham[,] and John Does and the [WBPD] had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so."  (DE 1 ¶ 48.)

However, if the Court agrees that Defendants are entitled to summary judgment as to Plaintiff's Section 1985(3) claim against them, then they are also entitled to summary judgment as to Plaintiff's Section 1986 claim.  *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990) ("Where a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986.").  (*See* DE 21 at 35.)

### 3.   Plaintiff's state law claims against Defendants Frederick and Mendham

Plaintiff's complaint also seemingly attempts to allege causes of action that are based, at least in part, upon state-law, such as Count V (malicious prosecution), Count VI (malicious abuse of process), Count VII (42 U.S.C. § 1983 / Battery), and Count VIII (conspiracy).  (*See* DE 1 ¶¶ 52-75.)  Defendants Frederick and Mendham argue that they are entitled to summary judgment as to Plaintiff's state law claims on the bases of governmental immunity and/or an inability to establish such claims.  (DE 21 at 35-37, 37-39.)

If the Court decides that Defendants Frederick and Mendham are entitled to summary judgment as to Plaintiff's federally-based claims against them, then the

Court "may decline to exercise supplemental jurisdiction" over Plaintiff's state law claims against them.  28 U.S.C. § 1367(c).  I recommend that it should so decline, bringing this case to a close, especially in light of Plaintiff's failure to even respond to this motion.

### H.    Conclusion

In sum, the Court should **GRANT** Defendants Mendham and Frederick's motion for summary judgment and decline to exercise supplemental jurisdiction over Plaintiff's state law claims against them.  (DE 21.)  Additionally, Plaintiff failed to substitute in named parties for the John Doe Defendant(s) on or before February 8, 2017.  In fact, since the entry of the Court's initial scheduling order establishing that deadline (DE 18), Plaintiff has filed only a November 22, 2017 motion to vacate the Court's December 8, 2016 opinion and order (*see* DE 19) and a July 3, 2018 motion for extension of time to respond to the instant motion (*see* DE 23).  As such, if the Court grants Defendants Mendham and Frederick's motion for summary judgment, then there will be no remaining, named Defendants in this matter.  It follows that the remaining, unidentified Defendants should also be dismissed.[6]

---

[6] Where "remaining defendants are all unknown and are sued under fictitious names...there is no method of serving the complaint in accord with due process, and no way that the action can otherwise proceed."  *Breslin v. City & Cty. of Philadelphia*, 92 F.R.D. 764, 765 (E.D. Pa. 1981) (citing *Duisen v. Terrel*, 332 F.Supp. 127, 129 (W.D. Mo. 1971)).  *See also Crawford v. Washington*, No. 4:17-

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

CV-11423, 2018 WL 3543600, at *9 n.9 (E.D. Mich. June 11, 2018) (Patti, M.J.), *report and recommendation adopted*, No. CV 17-11423, 2018 WL 3536608 (E.D. Mich. July 23, 2018) (Parker, J.); *Word v. City of Detroit, et al.*, Case No. 2:16-cv-11423-LJM-APP (E.D. Mich. Dec. 4. 2017) (Patti, M.J.), *report and recommendation accepted* (E.D. Mich. Jan. 3, 2018) (Michelson, J.).

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: November 16, 2018                          s/*Anthony P. Patti*
                                                  Anthony P. Patti
                                                  UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on November 16, 2018, electronically and/or by U.S. Mail.

                                                  s/Michael Williams
                                                  Case Manager for the
                                                  Honorable Anthony P. Patti